## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JOYCE SABO,**
              **Plaintiff,**

**v.**                                                **No: 5:06cv146/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
              **Defendant.**

_____

### REPORT AND RECOMMENDATION

**This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Sabo's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.**

**Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

In July 2002 plaintiff filed applications for disability and SSI benefits, claiming to have been disabled since 1992, ten years earlier.  The applications were denied initially and on reconsideration.   Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and a hearing was held on April 26, 2005 at which plaintiff was represented by counsel and testified.  A vocational expert also testified. The ALJ entered an unfavorable decision on March 29, 2006 (tr. 13-23) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2003; that she had not engaged in substantial gainful activity at any time relevant to the decision; that she had severe impairments of myofascial pain syndrome, major depressive disorder, borderline personality disorder and borderline intellectual functioning, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; that she had the residual functional capacity to lift and carry up to 50 pounds occasionally or 25 pounds frequently and to sit, stand, or walk for about 6 hours out of an 8 hour day but could not closely relate with others and could not perform high stress jobs, and must avoid hazards because of sedation from medication; that she was unable to perform any of her past relevant work; that she was 38 years old at the time of her claimed onset, with a high school education; that transferability of job skills was not material due to her age; that there were jobs existing in significant numbers in the national economy that the plaintiff could perform; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.   A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.    Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff claims to be disabled primarily from myofascial pain and/or fibromyalgia.  The first medical record on either of those matters is an office note from Kamel Elzawahry, M.D., a neurologist.  In an office note dated May 16, 2002, plaintiff was shown to be complaining of shoulder pain, neck pain, mid back pain, low back pain and leg pain with numbness.  She was noted to be a 48 year old, right-handed female "well known to me." (Tr. 203).  She had been evaluated in the past for similar symptoms and was known to have lumbar disc disease.  Lately she allegedly started experiencing severe back pain as well as hip and leg pain, worse with movement and activity.  She also complained of frequent migraine attacks.  On physical examination all findings were essentially normal other than a notation of multiple trigger points, but the points were not identified (tr. 202-203)  During the

next month numerous tests were performed, including x-rays of the shoulders, nerve conduction velocity/EMG of the leg and paraspinus muscles, and a CT scan of the lumbar spine.  All tests were read as being normal (tr. 196-205).  Plaintiff returned to see Dr. Elzawahry on June 24, 2003, still symptomatic but physical examination was normal other than a notation of "multiple trigger points were identified."  (tr. 195)

Plaintiff was treated by Dr. Elzawahry over the next three years, through at least January 2005.  There was very little variation in his office notes.  Plaintiff's complaints of pain would increase or decrease on any particular visit, some days worse than others.  A January 22, 2004 MRI of the lumbar spine was read as unremarkable (tr. 242-243).  Plaintiff's treatment consisted solely of medications, including opiates.  On September 22, 2003, Dr. Elzawahry filled out a questionnaire in which he noted the normal test findings, "trigger points-cervical and lumbar," normal reflexes and range of motion, grip strength, gait and station.  He also indicated that the plaintiff could squat, walk on her toes, walk on her heels, and did not need any assistive device for ambulation (tr. 239).  Shortly before the hearing on April 14, 2005, Dr. Elzawahry filled out a physical capacities evaluation in which he opined that plaintiff could sit or stand for two hours and walk for one hour at a time, and could sit or stand for three hours each and walk for one hour during a workday.  He further opined that she could lift and carry up to 10 pounds frequently and 11 pounds occasionally, never any more, that she had full use of her hands and legs but could bend, squat, crawl, and climb only occasionally (tr. 240).

Plaintiff was examined several times at the request of the Office of Disability Determinations.  For a physical examination she was seen by Osama Elshazly, M.D., an internist, on June 9, 2003.  Her physical examination was unremarkable except for tenderness over the lumbar spine with paraspinal muscular spasm.  "Claimant even jumped from the table when I touched her lumbar spine area."  Straight leg raising was positive at 45º bilaterally.  All other systems, including motor/nerve, strength/dexterity, coordination, station and gait were normal, although plaintiff

claimed that she was unable to squat and rise because of pain in her back.  Dr. Elshazly's impression was myofascial pain syndrome, cervical disc disease, lumbar disc disease and fibromyalgia.  In his opinion, "and based only on objective evidence, the claimant has several medical problems.  I am not sure if a CT scan or MRI has been done in the past."  Dr. Elshazly did not place any restrictions on the plaintiff's activities (tr. 207-208).

Plaintiff was also examined for psychological problems.  She was first seen on December 12, 2002 by James E. Hord, Jr., Ph.D., a clinical psychologist.  She appeared rather depressed and showed a great deal of neurotic fear and anger but there was no indication of loosening or perceptual disorders.  Sensorium and cognition were intact.  Her memory functions appeared normal and her intellectual ability probably fell within the average range.  Her judgment and insight were clear. Dr. Hord's diagnosis was major depression, recurrent, mild, and rule out borderline personality disorder.

On June 24, 2003 plaintiff was examined by D.K. Vijapura, M.D., a psychiatrist. Dr. Vijapura's examination was not remarkable although he noted that plaintiff occasionally expressed hopelessness and suicidal thoughts without plans of acting on them.  Dr. Vijapura's diagnosis was major depression, recurrent.  He also noted that plaintiff abused alcohol, and that she would benefit from seeing a psychiatrist with appropriate treatment for depression, provided she chose to refrain from the use of alcohol (tr. 218-220).

On July 25, 2005 plaintiff was seen by Dr. Robert S. Kline, III, a psychologist, who administered a WAIS-III test.  This showed a verbal IQ score of 79, a performance scale score of 68 and a full scale score of 72.  However, Dr. Kline felt that the plaintiff had put forth a minimally acceptable effort on the test and that the test results slightly underestimated her intellectual functioning.  Dr. Kline also administered an MMPI-2 test.  The results indicated that plaintiff made a fairly unsophisticated attempt to emphasize or exaggerate the severity of her problems

and that the questions were answered in a random and haphazard manner with little concern for or attention to the content of the questions.  Dr. Kline felt plaintiff was able to understand the questions adequately but finished the test in a random fashion in order to end the evaluation as quickly as possible.  Dr. Kline's diagnosis was major depressive disorder, recurrent, moderate (tr. 282-285).

Finally, plaintiff was again seen by Dr. Hord on December 14, 2005.  This time Dr. Hord administered the WAIS-III and the MMPI-2.  The IQ test showed a verbal score of 75, a performance score of 75, and a full scale score of 73.  The MMPI results suggested a profile that was highly skewed in the negative direction and raised questions about the overall validity of the results.  Plaintiff over-emphasized areas of depression, hysteria, psychopathy, paranoia and hypomania and obtained a pattern that would suggest neurotic, psychotic and personality disorders as all being possibilities.  This profile does not occur without a great deal of negative ideation being expressed by the patient.  For example, her score on the scale for schizophrenia was higher than scores obtained by true schizophrenics. Dr. Hord did not believe that the plaintiff was intentionally feigning or faking her symptomatology but indicated that <u>plaintiff</u> believed she was impaired.  His diagnosis was dysthymia (mild depression) and borderline retardation (tr. 290-294).

In this appeal the plaintiff argues that the ALJ erred in failing to give proper weight to plaintiff's subjective complaints of pain, and in failing to give proper weight to the opinion of her treating and examining physicians, and that plaintiff was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

## DISCUSSION

Plaintiff's claim concerning pain and her claim concerning the opinion of her treating physician, Dr. Elzawahry, as well as the opinions of examining physicians, greatly overlap.  Plaintiff consistently complained of pain.  No test ever confirmed the presence of severe physical abnormality, yet Dr. Elzawahry opined that plaintiff was severely limited physically.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test.  *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); Kelley *v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  *Wilson, supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)).  However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223.  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Plaintiff's subjective complaints of pain were generalized in nature.  Dr. Elzawahry felt that plaintiff had myofascial pain and/or fibromyalgia.  The diagnosis of fibromyalgia is based largely on the patient's subjective complaints, and positive laboratory findings are simply unavailable.  The disease has been recognized by The American College of Rheumatology as both real and difficult to confirm:

> Fibromyalgia is especially confusing and often misunderstood because almost all its symptoms are also common in other conditions. . . . Unfortunately, because certain symptoms lack physical and laboratory findings (signs), but depend mostly on a person's report of complaints and feelings (symptoms), these syndromes are often viewed as not being real or important.
> Arthritis Foundation & American College of Rheumatology, <u>Arthritis Information: Fibromyalgia</u> (1992).

The American College of Rheumatology has developed diagnostic criteria by which a person can be affirmatively diagnosed with the condition if he or she has

widespread pain in combination with tenderness in at least 11 of 18 specific tender point sites.  *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers About Fibromyalgia* (1999), available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm.  The Seventh Circuit has held that requiring positive laboratory findings is error in cases of this nature. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)[1]).  In *Stewart*, the Court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence. Thus, the ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed.  *Stewart,* 245 F.3d at 793, 2000 U.S.App. LEXIS 33214, at *9, n. 4.  More recently, the Eleventh Circuit addressed fibromyalgia in *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), where it reiterated the impropriety of focusing on the absence of objective findings corroborating claims of the impairment.  Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings. *See, e.g., Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817-18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.) Indeed, the Commissioner has recently instructed that in cases of chronic fatigue syndrome,

[1] Unpublished decisions of this court are not binding precedent. See 11th Cir. R. 36–2.

a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling 99-2p, 1999 WL 271569 (1999).

A thorough review of Dr. Elzawahry's records does not disclose any specific notation of American College of Rheumatology diagnostic criteria.  As the ALJ found, Dr. Elzawahry never noted the required widespread pain in combination with tenderness in at least 11 of 18 specific tender point sites.  Rather, his notes were brief, typically saying only that plaintiff's pain was at a certain level during a specific visit.  The first entry for Dr. Elzawahry indicated a very benign physical examination with notations of nothing more than "tenderness over the lower part of the back and both sciatic notches with positive forward bending and positive SLR," reproduced with extension of the spine (tr. 202).  The impression recorded that day was myofascial pain and symptoms suggestive of fibromyalgia (*id.*).  Shoulder x-rays, a nerve conduction study, a CT scan and an EMG done during the same period were all read as normal (tr. 196-205).  When plaintiff saw Dr. Elzawahry a month later, she was still symptomatic but her physical examination was entirely normal except for unexplained trigger points noted in the spine (tr. 195).  Throughout the three year period covered by Dr. Elzawahry's medical records, nothing more substantial was ever noted.  Indeed, in February 2003 Dr. Elzawahry filled out a form that indicated no abnormality in testing, reflexes, range of motion, grip strength, gait and station or ambulation.  He noted only unexplained cervical and lumbar trigger points (tr. 239).  A repeat lumbar MRI in January 2004 was unremarkable (tr. 242-243).

Thus, the record supports the ALJ's finding that Dr. Elzawahry's later opinion that plaintiff was severely limited was inconsistent with his own records.  This is because the ALJ is required to do something that a physician is not: make a credibility determination.  Underlying the *Hand* standard is the need for a credibility

determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Here the ALJ had a good deal more than Dr. Elzawahry's records on which to base his decision, including psychological reports indicating that plaintiff put forth substantially less effort than she was capable of, that she tested more schizophrenic than a true schizophrenic, and that her disability was in effect more self-induced than real.  Thus, the ALJ's finding that plaintiff's subjective complaints of pain were not entirely credible was supported by the record.  Consequently, plaintiff is not entitled to reversal on this ground.

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Review of the records of Drs. Elshalzy, Kline, Vijapura, and Hord does not change the result.  Taken together, they show that plaintiff was borderline mentally retarded, a fact acknowledged in the ALJ's finding residual functional capacity finding, but that her mental and physical impairments were not so severe as to make her disabled as defined in the Act.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of May, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).